*25-000256042*

GLOBAL WAREHOUSE SOLUTIONS, LLC AND
ARIK GLAISER

PLAINTIFF(S)

VS.

COVINGTON SPECIALTY INSURANCE
COMPANY AND MICHAEL BROWN

DEFENDANT(S)
_____/

SUBPOENA

**CASE #:** 25-17863 CA 01 (25)
**COURT:** 11TH JUDICIAL CIRCUIT
**COUNTY:** MIAMI-DADE
**DFS-SOP #:** 25-000256042

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the of the State of Florida's
Department of Financial Services. Said process was received by ELECTRONIC DELIVERY on
Thursday, October 23, 2025 and a copy was forwarded by ELECTRONIC DELIVERY on Friday,
October 24, 2025 to the designated agent for the named entity as shown below.

COVINGTON SPECIALTY INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not
responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise
ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

VAUSE'S PROCESS SERVICE
PO BOX 1777
TALLAHASSEE, FL 32302

JM1

Exhibit "A"

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GLOBAL WAREHOUSE SOLUTIONS, LLC., and
ARIK GLAISER,

       Plaintiffs,                           CASE NO. 25-17863 CA 01 (25)

vs.

COVINGTON SPECIALTY INSURANCE COMPANY
and MICHAEL BROWN,

       Defendants.

_____/

## SUMMONS

CIVIL ACTION SUMMONS Personal Service of an Individual
IMPORTANTE En Español Al Dorso
IMPORTANT Francais Au Verso

**TO:**   COVINGTON SPECIALTY INSURANCE COMPANY
      Service of Process - Office of the General Counsel
      200 East Gaines Street
      Tallahassee, Florida 32399-4201

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the Plaintiff/Plaintiff's Attorney named below.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como Plaintiff/Plaintiff's Attorney (Demandante o Abogado del Demandante).

## **IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au APlaintiff/Plaintiff's Attorney (Plaignant ou a son avocat) nomme ci-dessous.

If you choose to file a written response yourself, at the same time you file your written response to the Court located at: **Clerk of the Circuit Court of Miami-Dade County, 73 West Flagler Street Miami, FL. 33130.**

You must also mail or take a carbon copy or photocopy of your written response to the " Attorney" named below. **John B. Agnetti, Esq., Hoffman, Larin & Agnetti, P. A., 909 North Miami Beach Blvd., Suite 201, Miami, FL. 33162-3712 Phone: (305) 653-555.**

THE STATE OF FLORIDA TO EACH SHERIFF OF THE STATE:   You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above-named Defendant.

Dated on this _____, day of _____ 2025.
10/22/2025

Juan Fernandez-Barquin, as Clerk of said Court

Juan Fernandez-Barquin,
Clerk of the Court and Comptroller

By: _____
                    323263
          as Deputy Clerk

(Court Seal)

2

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>GLOBAL WAREHOUSE SOLUTIONS, LLC., ARIK GLAISER</u>
Plaintiff

Case # <u>25-17863 CA 01  (25)</u>

Judge <u>           </u>

vs.

<u>COVINGTON SPECIALTY INSURANCE COMPANY, MICHAEL BROWN</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

Exhibit "A"

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☒ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

Exhibit "A"

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.   REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.   NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  1

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☐ no
    ☒ yes If "yes," list all related cases by name, case number, and court.
    2024-17516-CA-01

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.   DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ John B Agnetti      Fla. Bar # 359841
    Attorney or party      (Bar # if attorney)

John B Agnetti      09/11/2025
  (type or print name)      Date

Exhibit "A"

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GLOBAL WAREHOUSE SOLUTIONS, LLC.,
and ARIK GLAISER,

                Plaintiffs,

                                   CIVIL DIVISION

vs.                                           CASE NO.  2025-17863 CA 01 (25)

COVINGTON SPECIALTY INSURANCE COMPANY
and MICHAEL BROWN,

                Defendants.

_____ _____ _____ ____ /

## **COMPLAINT**

      **COMES NOW**, the Plaintiffs, GLOBAL WAREHOUSE SOLUTIONS, LLC., and ARIK

GLAISER (hereinafter "Plaintiffs"), by and through the undersigned counsel who files this Complaint

against the Defendants, COVINGTON SPECIALTY INSURANCE COMPANY and MICHAEL

BROWN, and further alleges as follows:

## **GENERAL ALLEGATIONS**

1.     This is an action for a declaratory judgment under F.S. 86.011 et seq and for damages in excess

of the minimum jurisdiction of this court.

2.     Plaintiff, GLOBAL WAREHOUSE SOLUTIONS, LLC., is a Florida Limited Liability

Company licensed and authorized to do and doing business in Miami-Dade County, Florida.

3.     Plaintiff ARIK GLAISER was an employee of Plaintiff GLOBAL WAREHOUSE

SOLUTIONS, LLC., and is a resident of the County of Broward, State of Florida.

4.     Defendant COVINGTON SPECIALTY INSURANCE COMPANY is an insurance company

authorized to do and doing business in Miami-Dade County, Florida.

5.     Defendant, MICHAEL BROWN is a resident of County of Miami-Dade, State of Florida.

Exhibit "A"

6.      On or about December 6, 2023, Defendant, GLOBAL WAREHOUSE SOLUTIONS, LLC., owned a forklift.

7.      On or about December 6, 2023, Plaintiff, ARIK GLAISER, operated the forklift with the permission and consent of the forklift's owner, Plaintiff, GLOBAL WAREHOUSE SOLUTIONS, LLC.

8.      On or about December 6, 2023, Plaintiff, ARIK GLAISER, was operating the subject forklift in the course and scope of his employment with Defendant, GLOBAL WAREHOUSE SOLUTIONS, LLC.

9.      On or about December 6, 2023, in Miami-Dade County, Plaintiff, ARIK GLAISER, was operating a forklift that was involved in an occurrence in which it collided with a vehicle which Defendant, MICHAEL BROWN, was operating.

10.     Defendant, MICHAEL BROWN filed a suit for damages against the Plaintiffs, which is pending in Miami-Dade County, and bears circuit court case #2024-017516-CA-01.

11.     At all times material hereto, Plaintiffs, were insureds under a policy of liability insurance issued by defendant, COVINGTON SPECIALTY INSURANCE COMPANY issued in Miami-Dade County. (Exhibit 1).

12.     Plaintiffs duly notified Defendant COVINGTON SPECIALTY INSURANCE COMPANY of said claim and lawsuit and demanded pursuant to the terms and conditions of the policy that said defendant provide it with a defense and indemnity.

13.     Defendant COVINGTON SPECIALTY INSURANCE COMPANY has wrongfully disclaimed coverage under said policy and has refused to defend and indemnify Plaintiffs in connection with said claim and lawsuit. (Exhibit 2).

14.     Under well settled Florida Law, the duty to defend is broader than the duty to indemnify. However, Defendant has wrongfully, willfully and in bad faith refused to defend Plaintiffs in the above lawsuit and as a result, Plaintiffs have incurred attorney's fees and costs in said defense.

2

Exhibit "A"

15.     Plaintiffs have retained the undersigned counsel to bring this action and Plaintiffs are entitled to their costs and attorney's fees.

**COUNT I**
**ACTION FOR A DECLARATORY JUDGEMENT**

16.     Plaintiffs reallege paragraphs 1-15 as if fully set forth herein.

17.     This is an action for a declaratory judgment pursuant to F.S. 86.011.

18.     There is a bona fide dispute between Plaintiffs and Defendant, COVINGTON SPECIALTY INSURANCE COMPANY concerning coverage under said insurance policy and/or the parties are in doubt as to their rights and responsibilities under said policy.

19.     Defendant, COVINGTON SPECIALTY INSURANCE COMPANY claims there is no coverage for the damages claimed by defendant MICHAEL BROWN in that "…the Absolute Aircraft, Auto and Watercraft Exclusion removes coverage for damages arising out of or resulting from the use of any 'auto'." (Ex.2).

20.     Plaintiff claims there is coverage for the damages claimed by defendant MICHAEL BROWN in that the policy covers occurrences involving forklifts as follows

a. The term "auto" does not include "mobile equipment". (Ex. 1: SECTION V – DEFINITIONS: (2).

b. The term "Mobile equipment" specifically includes forklifts. (Ex. 1: SECTION V – DEFINITIONS: (12)(a)).

21.     As a result of said dispute, the parties are in need of a declaration by this court of their rights and responsibilities under said policy.

WHERFORE, Plaintiffs respectfully demand that this court enter a declaratory judgment that there is coverage under the said insurance policy and that Plaintiffs are entitled to a defense and

3

Exhibit "A"

indemnity thereunder from defendant COVINGTON SPECIALTY INSURANCE COMPANY and their attorney's fees and costs and trial by jury of any questions of fact.

**COUNT II**
**ACTION FOR BREACH OF CONTRACT**

22.   Plaintiffs reallege paragraphs 1-10 and 19 and 20 as if fully set forth herein.

23.   Plaintiffs have complied with all conditions precedent.

24.   Defendant COVINGTON SPECIALTY INSURANCE COMPANY has breached its duty and responsibility to defend and indemnify Plaintiffs under said policy.

25.   As a proximate result thereof, Plaintiffs have incurred damages and will incur damages in the future including costs and attorney's fees.

   **WHERFORE**, Plaintiffs respectfully demand damages against defendant COVINGTON SPECIALTY INSURANCE COMPANY and its attorney's fees and costs and trial by jury of any questions of fact.


   Date: September 11, 2025


   **HOFFMAN, LARIN & AGNETTI, P. A.**
   909 North Miami Beach Blvd., Suite 201
   N. Miami Beach, Florida 33162
   (305) 653-5555 Telephone
   (305) 940-0090 Facsimile
   Attorneys for the Plaintiffs
   pleadings@hlalaw.com
   john@hlalaw.com

   */s/ John B. Agnetti*
   John B. Agnetti, Esq.
   Florida Bar No. 359841

4

# EXHIBIT





Insured's Name: <u>Global Warehouse Solutions, LLC; Al-Dan Trading, Inc.</u>
Policy Number: <u>VBB101043 00</u>
Policy Dates: From: <u>5/2/2024</u>   To: <u>5/2/2025</u>
Surplus Lines Agent's Name: <u>Darren Marsh</u>   Surplus Lines Agent's License #: <u>A165669</u>
Surplus Lines Agent's Address: <u>5900 Hiatus Road, Tamarac, Florida 33321</u>
Producing Agent's Name: <u>David Ragno</u>
Producing Agent's Physical Address: <u>5900 Hiatus Road</u>
                                      <u>Tamarac, FL 33321</u>

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

| | |
|---|---:|
| Policy Premium: | $11,195.00 |
| SL Agent Policy Fee: | $250.00 |
| Inspection Fee: | |
| Other Policy Fees: | |
| Total Premium & Fees: | $11,445.00 |
| Surplus Tax: | $565.38 |
| FSLSO Service Fee | $6.87 |
| **Total** | **$12,017.25** |

Surplus Lines Agent's Countersignature:   Darren Marsh

**THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

*If your policy provides coverage for wind damage:*

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

Confirmation # A043855496747

Exhibit "A"



**CLAIM OFFICE:**

**Mail claims to:**
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA  30326-1160

**Fax claims to:**
(404) 231-3755
(Attn: Claims Department)

**Email claims to:**
reportclaims@rsui.com
(Attn: Claims Department)

GBA 901001 1112

Your policy has been signed on our behalf by our President and by our Secretary and Treasurer   However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

President

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

Secretary

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

Exhibit "A"



**FLORIDA COMMON POLICY DECLARATIONS**

THIS POLICY IS ISSUED BY THE COMPANY NAMED BELOW

**COMPANY NAME:**   Covington Specialty Insurance Company (A New Hampshire Stock Company)

**BRANCH ADDRESS:**   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

**POLICY NO.:** VBB101043 00                    **PRIOR POLICY:**   VBA916655 00

**NAMED INSURED:**
GLOBAL WAREHOUSE SOLUTIONS, LLC; AL-DAN TRADING, INC.

**MAILING ADDRESS:**
20600 NORTHWEST 47TH AVENUE
MIAMI GARDENS, FL  33055

**POLICY PERIOD:**    From   05/02/2024    to   05/02/2025     12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

☒    **THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

☒    **SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

☐    **THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

☐    **THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

Exhibit "A"



**FLORIDA COMMON POLICY DECLARATIONS**

THIS POLICY IS ISSUED BY THE COMPANY NAMED BELOW

**COMPANY NAME:**   COVINGTON SPECIALTY INSURANCE COMPANY

**BRANCH ADDRESS:**   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

**POLICY NO.:**  VBB101043 00

**NAMED INSURED:**
GLOBAL WAREHOUSE SOLUTIONS, LLC; AL-DAN TRADING, INC.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | | PREMIUM |
|---|---|---|
| Commercial Property | $ | Not Covered |
| Commercial General Liability | $ | 11,195.00 |
| Liquor Liability | $ | Not Covered |
| Commercial Inland Marine | $ | Not Covered |
| Commercial Professional Liability | $ | Not Covered |
| Annual Minimum and Deposit Premium | $ | 11,195.00 |

Audit Period:  Annual unless otherwise stated:

| SL taxes and fees | SLB Policy Fee     $250.00<br>Surplus Lines Tax        $565.38<br>FSLSO Fee        $6.87 | | | |
|---|---|---|---|---|
| | | Terrorism Premium | $ | --Excluded-- |
| Other | | Other charges (SL taxes, fees) | $ | 822.25 |
| | | **TOTAL POLICY PREMIUM** | $ | 12,017.25 |

**FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS:**
   **SEE SCHEDULE OF FORMS AND ENDORSEMENTS – GBA900002**

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

**AGENCY NAME / ADDRESS:**
DARREN MARSH A165669
SLB INSURANCE GROUP - FL
5900 N. HIATUS ROAD
TAMARAC, FL  33321

Countersigned: _____5/7/2024_____          By: _____
                        Date                                                     Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services, Inc., 1984.

GBA 900016 0819                                                                                    Page 2 of 2



**COMMERCIAL LINES SUPPLEMENTAL DECLARATIONS**

**POLICY NO.:** VBB101043 00            **EFFECTIVE DATE:** 5/2/2024

**NAMED INSURED:** GLOBAL WAREHOUSE SOLUTIONS, LLC; AL-DAN TRADING, INC.

SCHEDULE OF ENDORSEMENTS

| FORM NUMBER | TITLE |
|---|---|
| GBA 901001 1112 | Insurance Policy Jacket |
| | **Forms Applicable to All Coverage Parts** |
| GBA 900016 0819 | Florida Common Policy Declarations |
| GBA 909008 0407 | Florida Important Notice to Policyholders |
| GBA 909022 1022 | State Fraud Statement |
| RSG 99018 1211 | Notice - Rejection of Terrorism Coverage |
| GBA 904010 0117 | Minimum Earned Premium Retained |
| GBA 904023 0322 | Amendment - Common Policy Conditions (Return Premium) |
| GBA 904025 1122 | Amendment - Nonpayment Cancellation Condition |
| GBA 906005 0115 | Exclusion Of Terrorism |
| GBA 906011 0414 | Exclusion of Other Nuclear, Biological, Chemical or Radiological Acts of Terrorism |
| GBA 909001 0407 | Service of Suit |
| IL 0017 1198 | Common Policy Conditions |
| IL 0021 0504 | Nuclear Exclusion |
| | **Forms Applicable to Coverage Part - GENERAL LIABILITY** |
| GBA 100001 0820 | Commercial General Liability Coverage Part Declarations |
| CG 0001 0413 | Commercial General Liability Coverage Form |
| CG 2010 1219 | Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization |
| CG 2018 1219 | Additional Insured - Mortgagee, Assignee or Receiver |
| CG 2144 0798 | Limitation of Coverage to Designated Premises or Project |
| GBA 104014 0106 | Basis of Premium |
| GBA 104044 0820 | Who Is An Insured |
| GBA 106015 0221 | Classification Limitation |
| GBA 106020 1105 | Exclusion - Designated Entities |
| GBA 106059 0221 | Exclusions and Limitations Amendatory |
| GBA 106068 1215 | Absolute Aircraft Auto and Watercraft Exclusion |

GBA 900002 1105



**COMMERCIAL LINES SUPPLEMENTAL DECLARATIONS**

**POLICY NO.:** VBB101043 00     **EFFECTIVE DATE:** 5/2/2024

**NAMED INSURED:** GLOBAL WAREHOUSE SOLUTIONS, LLC; AL-DAN TRADING, INC.

SCHEDULE OF ENDORSEMENTS

| FORM NUMBER | TITLE |
|---|---|
| GBA 106082 0422 | Aircraft Products - Completed Operations Exclusion |
| GBA 106089 0517 | Exclusion - Property Entrusted |
| GBA 106092 0819 | Products - Completed Operations Included in General Aggregate |
| GBA 106105 0918 | Exclusion - Wrap-Up |
| GBA 106124 1220 | Exclusion - Injury to Contracted Persons and Other Workers |
| GBA 106136 0423 | Exclusion - Marijuana and Cannabis |
| GBA 106151 0320 | Absolute Opioid and Controlled Substance Exclusion |
| GBA 106162 0321 | Exclusion - Unmanned Aircraft |
| GBA 106167 0422 | Exclusion - Cyber Liability, Data Compromise or Breach, and Statutes Related to Data Security |
| GBA 106174 0322 | Exclusion - Canines |
| GBA 106178 0523 | Absolute Exclusion - Fluorinated Compounds |
| | **Forms Applicable to STATE FORMS and ENDORSEMENTS** |
| GBA 903001 0914 | Florida Changes - Cancellation and Nonrenewal |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

GBA 900002 1105

Exhibit "A"

**COVINGTON SPECIALTY INSURANCE COMPANY**

## *IMPORTANT NOTICE*

**IMPORTANT INFORMATION TO FLORIDA POLICYHOLDERS**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**QUESTIONS ABOUT YOUR INSURANCE? -** If you have any inquiries, need to obtain coverage information or need assistance in resolving complaints, please do not hesitate to contact your insurance company or agent.

FOR **COMMERCIAL INSURANCE** CONTACT:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326

Call Collect          (404) 231-2366

GBA 909008 0407

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

## State Fraud Statements

(Signature Required for New York Only)

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form.  Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### DELAWARE FRAUD STATEMENT

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

### FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

Exhibit "A"

### HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

### IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### KANSAS FRAUD STATEMENT

An act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

### KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

### MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

Exhibit "A"

### NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

### OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

### OREGON FRAUD STATEMENT

Any person who knowingly files a claim containing a false or deceptive statement for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

### PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

### PUERTO RICO FRAUD STATEMENT

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

### TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

Exhibit "A"

**SIGNATURE REQUIRED – NEW YORK ONLY**

**NEW YORK FRAUD STATEMENT**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

VBB101043 00
_____
Policy Number

_____
Insured/Applicant/Claimant (Legal Entity)

_____
By (Authorized Representative) - Printed Name

_____
By (Authorized Representative) - Signature

_____
Title

_____
Date

GBA 909022 1022

Page 4 of 4

Exhibit "A"

Policy Number:   VBB101043 00

Insurer:   COVINGTON SPECIALTY INSURANCE COMPANY

Named Insured:   GLOBAL WAREHOUSE SOLUTIONS, LLC; AL-DAN T

## NOTICE - REJECTION OF TERRORISM COVERAGE

Coverage has been "rejected" by the Insured for all acts of terrorism including but not limited to "certified acts of terrorism" under the federal Terrorism Risk Insurance Act.

RSG 99018 1211

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MINIMUM EARNED PREMIUM RETAINED

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

If this insurance is cancelled at your request, there will be a minimum earned premium retained by us of $\_\_\_\_\_ or 25\_\_\_% of the premium for this insurance, whichever is greater.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel.  In the event of any other cancellation by the Company, the earned premium shall be computed pro rata, not subject to the minimum premium.

Nothing in this endorsement is deemed to affect the Company's cancellation rights, which remain indicated in the policy form.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** VBB101043 00

GBA 904010 0117

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDMENT – COMMON POLICY
# CONDITIONS (RETURN PREMIUMS)

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

**A.** Paragraph **A**. **Cancellation**, item **5.**, of the Common Policy Conditions is deleted and replaced by the following:

> **5.** If this policy is cancelled, we will send the first Named Insured, or the entity which paid us the premium on behalf of the Named Insured, any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** Any other endorsement attached to this policy which amends Paragraph **A**. **Cancellation** of the Common Policy Conditions is amended such that any refund of premiums may instead be sent to the entity which paid us the premium on behalf of the Named Insured. This condition shall supersede any other to the contrary.

**C.** Paragraph **E**. **Premiums** of the Common Policy Conditions is deleted and replaced by the following:

> **1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

> **2.** The first Named Insured shown in the Declarations, or the entity which paid us the premium on behalf of the Named Insured, will be the payee for any return premiums we pay.

**Policy No.:**  VBB101043 00

GBA 904023 0322

Exhibit "A"

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDMENT – NONPAYMENT CANCELLATION CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART**

The following is added to any Cancellation Condition for nonpayment of premium found anywhere in the policy:

If the insured failed to pay premium or a deductible charged on a prior policy we issued and payment in full has not been made prior to or during the current policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgageholder(s), if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

**Policy No.:**  VBB101043 00

GBA 904025 1122

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

## ALL COVERAGE PARTS

A.  Definitions

   1.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

      a.  The act resulted in aggregate losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

      b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   2.  "Other act of terrorism" means activities against persons, organizations or property of any nature:

      A.  That involves the following or preparation for the following:

         1.  Use or threat of force or violence; or

         2.  Commission or threat of a dangerous act; or

         3.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

      B.  When one or both of the following applies:

         1.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

         2.  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

      C.  The act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act.

B.  The following exclusion is added:

   Exclusion of Certified Acts of Terrorism and Other Acts of Terrorism

   We will not pay for loss or damage including but not limited to "bodily injury", "property damage", "personal and advertising injury" or medical payments, under any Coverage Part of this policy, caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism".  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  But with respect to an "other act of terrorism" which may be subject to any underlying policy exclusion, this exclusion applies only when one or more of the following are attributed to such act:

   1.  That involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

   2.  That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

   3.  In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

Policy No.: VBB101043 00

GBA 906005 0115

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION OF OTHER NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

A.  The following exclusion is added:

This insurance does not apply to any liability arising, directly or indirectly, out of an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1.  The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2.  The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such material.

B.  The following definition is added:

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorism act pursuant to the federal Terrorism Risk Insurance Act.  Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have related purpose or common leadership shall be considered to be one incident.

**Policy No.:**  VBB101043 00

GBA 906011 0414

Exhibit "A"

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully*

# SERVICE OF SUIT

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy.

Service of process in such suit may be made upon the Senior Claims Officer of RSUI Group, Inc. 945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of the policy remain unchanged.

**Policy No.:** VBB101043 00

GBA 909001 0407

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc.,  1998

□

Exhibit "A"

INTERLINE
IL 00 21 05 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

Exhibit "A"

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

           © ISO Properties, Inc., 2001           IL 00 21 05 04   ☐

Exhibit "A"



**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

☐ "X" IF SUPPLEMENTAL DECLARATIONS ATTACHED

**1. POLICY NO.:**  VBB101043 00          **EFFECTIVE DATE:**  5/2/2024

**2. NAMED INSURED:**  GLOBAL WAREHOUSE SOLUTIONS, LLC; AL-DAN TRADING, INC.

## 3. LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage To Premises Rented To You Limit | $ | 100,000  Any One Premise |
| Medical Expense Limit | $ | 5,000  Any One Person |

Coverage A of this insurance does not apply to injury caused by a wrongful act which was committed before the Retroactive Date, if any shown here: Retroactive Date: **None** (Enter Date or "None" if no Retroactive Date)

*LOCATIONS INCLUDING ZIP CODE OF ALL PREMISES YOU OWN, RENT OR OCCUPY* (Enter "same" if same location as your mailing address):
1. 20600 NORTHWEST 47TH AVENUE, MIAMI GARDENS, FL 33055

| CODE NO. | PREM NO. | CLASSIFICATION | PREMIUM BASIS | EXPOSURE AMOUNT | RATE PR/CO | RATE ALL OTHER | ADVANCE PREMIUM PR/CO | ADVANCE PREMIUM ALL OTHER |
|---|---|---|---|---|---|---|---|---|
| 49950 | 1 | CG 2010 - Additional Insured - Owners, Lessors or Contractors-Scheduled Person or Organization | Each | 1 | Incl | 100.000 | Incl | $100.00 |
| 49950 | 1 | CG 2018 - Additional Insured - Mortgagee, Assignee or Receiver | Other | 1 | Incl | Incl | Incl | Incl |
| 99938 | 1 | Warehouses | Payroll | 311,319 | Incl | 35.639 | Incl | $11,095.00 |

| | PR/CO | ALL OTHER |
|---|---|---|
| TOTAL ADVANCE PREMIUM FOR THIS PAGE | $ .00 | $ 11,195.00 |
| TOTAL ADVANCE PREMIUM FOR THIS COVERAGE PART | | $ 11,195.00 |

## 4. FORMS AND ENDORSEMENTS APPLICABLE (other than applicable Forms and Endorsements shown elsewhere in this policy)
*Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

### SEE SCHEDULE OF FORMS AND ENDORSEMENTS – GBA900002

*Entry optional if shown on Common Policy Declarations

THESE DECLARATIONS, WHEN COMBINED WITH THE COMMON POLICY DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services, Inc., 1984.

GBA 100001 0820                                                                 Page 1

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury"

Exhibit "A"

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012     CG 00 01 04 13

Exhibit "A"

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

Exhibit "A"

**(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

   **(a)** Less than 26 feet long; and

   **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

   **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

Exhibit "A"

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III – Limits Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

Exhibit "A"

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement"

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

Exhibit "A"

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exhibit "A"

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Exhibit "A"

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit"

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Exhibit "A"

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

Exhibit "A"

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Exhibit "A"

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

Exhibit "A"

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Exhibit "A"

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   © Insurance Services Office, Inc., 2012   CG 00 01 04 13

Exhibit "A"

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   (a) When all of the work called for in your contract has been completed.

   (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

© Insurance Services Office, Inc., 2012

Exhibit "A"

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Exhibit "A"

POLICY NUMBER: VBB101043 00

**COMMERCIAL GENERAL LIABILITY
CG 20 10 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| Rosenthal & Rosenthal of California, Inc. 21700 West Oxnard St., Ste. 1880 Los Angeles, CA 91367 | Location(s) as specified in written contract with the Additional Insured shown in the schedule of this endorsement |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© Insurance Services Office, Inc., 2018

Exhibit "A"

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

Exhibit "A"

POLICY NUMBER: VBB101043 00

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name(s) Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Wells Fargo Bank, N.A.<br>PO Box 35702<br>Billing, MT 59107 | 20600 NW 47th Avenue, Miami Gardens, FL 33055 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**CG 20 18 12 19**

© Insurance Services Office, Inc., 2018

Page 1 of 1   ☐

Exhibit "A"

POLICY NUMBER: VBB101043 00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Premises:**
REFER TO THE COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS, ITS ENDORSEMENTS AND SUPPLEMENTS

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

**CG 21 44 07 98**        Copyright, Insurance Services Office, Inc., 1997        Page 1 of 1        □

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully*

# BASIS OF PREMIUM

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The words and phrases that appear in the Declarations related to the calculation of premium have special meaning and are defined below:

1. "Admissions" means the total number of persons, other than employees of the named insured, admitted to the event(s) insured or to the event(s) conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

2. "Area" means the total number of square feet of floor space at the insured premises.

3. "Each" This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the premium classification footnotes, such as "each person".

4. "Gross Sales" means the gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:

    a. All goods or products, sold or distributed;

    b. Operations performed during the policy period, including operations performed for the insured by independent contractors;

    c. Rentals; and

    d. Dues or fees.

    "Gross Sales" does not include sales or excise taxes which are collected and submitted to a governmental division, or finance charges for items sold on installments.

5. "Payroll" means the total payroll earned during the policy period by proprietors and by all "employees", "leased workers" and "temporary workers" of the Named Insured and includes commissions, bonuses, extra pay for overtime work and pay for holidays, vacations or period of sickness.  Payroll does not include tips and other gratuities.

6. "Total Cost" means the total cost of all work let or sublet including:

    a. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; and

    b. All fees, bonuses or commissions made, paid or due.

7. "Units" means a single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

Policy No.: VBB101043 00

GBA 104014 0106

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# WHO IS AN INSURED AMENDMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Paragraph **1.** of **Section II – Who Is An Insured** is replaced by the following:

1. If you are:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

All other terms and conditions of this policy remain unchanged.

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CLASSIFICATION LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C MEDICAL PAYMENTS, 2. Exclusions:

"Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of or related in any way to operations which are not classified or shown on the Commercial General Liability Coverage Part Declarations, its endorsements or supplements.

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  VBB101043 00

GBA 106015 0221

Exhibit "A"

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – DESIGNATED ENTITIES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**Schedule**

Designated Entities:
Al-Dan Trading, Inc

(If no entry appears above, information required to complete this endorsement will be shown on the Declarations as applicable to this endorsement.)

The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; and COVERAGE C MEDICAL PAYMENTS, 2. Exclusions

"Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of:

a.   The entities shown on the Schedule above;

b.   Operations of those entities; or

c.   Goods or products manufactured, sold, handled, distributed or disposed of by those entities.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** VBB101043 00

GBA 106020 1105

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSIONS AND LIMITATIONS AMENDATORY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Employment Related Practices

The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions:

**1.** "Bodily injury" or "personal and advertising injury" to:

   **a.** A person arising out of any:

   **(1)** Refusal to employ that person;

   **(2)** Termination of that person's employment; or

   **(3)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **b.** Any family member or dependent of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in **A.1.a.** above is directed.

**2.** This exclusion applies:

   **a.** Whether the insured may be liable as an employer or in any other capacity; and

   **b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** Professional Services

The following is added as an item to SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; and COVERAGE C MEDICAL PAYMENTS, 2 Exclusions:

"Bodily injury", "property damage", "personal and advertising injury" or medical expenses arising out of the rendering of or failure to render any professional service.

**C.** Deposit Premium and Minimum Premium

SECTION IV - CONDITIONS, 5. Premium Audit, item b. is deleted and replaced by the following:

Premium shown in this Coverage Part as advance premium is both a deposit premium and a minimum premium for the full policy period.  At the close of each audit period, we will compute the earned premium for that period.  If the earned premium is more than the advanced premium, notice of the amount by which it exceeds the advance premium will be sent to the first Named Insured.   The due date for audit and retrospective premiums is the date shown as the due date on the bill.  If the earned premium is less than the advance premium, the advance premium will apply as the minimum premium, with no return premium payable to you.

Should it become necessary to institute collection activities, including litigation, in order to collect an earned premium, then, in addition to the earned premium, you shall be responsible for a collection fee of 33%, and 100% of any and all other collection expenses, fees, and costs that we incur, plus interest as provided by law.

You shall maintain records of such information as is necessary for premium computation, and shall send copies of such records at the end of the policy period and at such times during the policy period as we may direct.

**Policy No.:**  VBB101043 00

Exhibit "A"

D. Asbestos, Silica

The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of or in any way related to the actual or alleged presence or actual, alleged or threatened dispersal, discharge, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of:

   a. Asbestos, asbestos fibers or products containing asbestos provided that the "bodily injury", "property damage" or "personal and advertising injury" is caused or contributed to by the hazardous properties of asbestos.

   b. Silica or products or substances containing silica.

2. This includes but is not limited to:

   a. Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with the above; and

   b. Any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury", "property damage" or "personal and advertising injury".

3. This exclusion applies to all such "bodily injury", "property damage" or "personal and advertising injury" whether or not the "bodily injury", "property damage" or "personal and advertising injury" is included in the "products-completed operations hazard".

E. Fungi, Bacteria or Mold

The following is added as an item to SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions:

1. "Bodily injury", "property damage"  or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi", bacteria or mold on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such "bodily injury", "property damage" or "personal and advertising injury".

2. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi", bacteria or mold, by any insured or by any other person or entity.

3. This exclusion does not apply to any "fungi", bacteria or mold that are on, or are contained in, a good or product intended for bodily consumption.

F. Total Pollution

SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, item f. Pollution is replaced by the following:

   f. Pollution

   (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   (2) Any loss, cost or expense arising out of any:

      (a) Request, demand or order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

      (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing, the effects of, "pollutants"

Exhibit "A"

**G.** Lead or Lead Hazard

The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; and COVERAGE C MEDICAL PAYMENTS, 2 Exclusions:

"Bodily injury", "property damage", "personal and advertising injury", medical payments, loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance.  This exclusion applies, but is not limited to any:

1.   Supervision, instructions, recommendations, warnings or advice given in connection with the above;

2.   Obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury", "property damage", "personal and advertising injury", medical payments, loss, cost, payment or expense; or

3.   Request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of lead, lead compounds or materials or substances containing lead.

**H.** Definitions

1.   SECTION V - DEFINITIONS, 15. Pollutants is deleted and replaced by the following:

15.   "Pollutants" mean any solid, liquid, gaseous or thermal irritant, contaminant or toxin, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals and waste.  Waste also includes materials to be recycled, reconditioned, or reclaimed.

2.   The following definition is added to SECTION V - DEFINITIONS:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

All other terms and conditions of this policy remain unchanged.

Exhibit "A"

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE AIRCRAFT, AUTO AND WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, paragraph g. is deleted and replaced with the following:

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

B. SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C MEDICAL PAYMENTS, 2. Exclusions, the following is added:

"Personal and advertising injury" or medical expenses arising out of the ownership, maintenance, operation, use or entrustment to others of any aircraft, "auto" or watercraft.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "personal and advertising injury" or medical expenses involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

C. SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, paragraph b. Excess Insurance, subparagraph (1)(a)(iv) is deleted.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** VBB101043 00

GBA 106068 1215

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AIRCRAFT PRODUCTS – COMPLETED OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; and COVERAGE C MEDICAL PAYMENTS, 2. Exclusions:

"Bodily injury", "property damage", medical expenses, or supplementary payments arising out of your "aircraft products" included within the "products-completed operations hazard" insurance.

**B.** For the purpose of this endorsement, the following definitions apply:

**1**   "Aircraft products" means aircraft (including "unmanned aircraft", missiles, or spacecraft and any ground support or control equipment used therewith), all articles installed and used in the operation or navigation of the aircraft, or articles including spare parts, ground handling tools, equipment, training aids, instructions, manuals, blueprints, engineering or other data or advice. This also includes services and labor relating to such aircraft or articles.

**2.**   "Unmanned aircraft" means an aircraft that is not:

   **a.**   Designed;

   **b.**   Manufactured; or

   **c.**   Modified after manufacture;

   to be controlled directly by a person from within or on the aircraft.

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  VBB101043 00

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PROPERTY ENTRUSTED

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "property damage" to property of others entrusted or consigned to you or in your possession.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** VBB101043 00

GBA 106089 0517

Exhibit "A"

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PRODUCTS – COMPLETED OPERATIONS INCLUDED IN GENERAL AGGREGATE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For those classifications which are classified or shown on the Commercial General Liability Coverage Part Declarations, its endorsements or supplements, as included (which may also be designated by Incl or INCL) for Products and Completed Operations (shown as PR/CO on the declarations), if any, the exposure for such is included within the General Aggregate Limit, and no separate Products-Completed Operations Aggregate Limit applies.

You are not covered for "bodily injury" and "property damage" included in the "products-completed operations hazard" for operations arising out of any other operations not listed on your policy.

**Policy No.:** VBB101043 00

GBA 106092 0819

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EXCLUSION – WRAP-UP

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**Schedule**

The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C – MEDICAL PAYMENTS, 2. Exclusions:

This insurance does not apply to any liability for "bodily injury", "property damage", "personal and advertising injury" or medical expenses arising out of either:

  1. Your ongoing operations; or

  2. Operations included within the "products-completed operations hazard";

  at or on any project, or away from the construction site of the project, for which a "consolidated insurance program (wrap-up)" has been provided for the project in which any insured is involved.

This exclusion applies whether or not:

  1. Any insured under this policy is enrolled in the "consolidated insurance program (wrap-up)"; or

  2. The "consolidated insurance program (wrap-up)":

   a. Provides coverage identical to that provided by this policy;

   b. Has limits adequate to cover all claims; or

   c. Remains in effect.

"Consolidated insurance program (wrap-up)" means a controlled insurance program or similar rating plan procured by a prime contractor, project manager, developer, or owner that provides liability coverage for the project

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – INJURY TO CONTRACTED PERSONS AND OTHER WORKERS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.  Injury to Contracted Persons and Other Workers

1.  SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, item e. Employer's Liability is deleted.

2.  SECTION I – COVERAGES, COVERAGE C MEDICAL PAYMENTS, 2. Exclusions, item a. Any Insured is deleted and replaced by the following:

    a.  **Any Insured**

    To any insured.

3.  The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; and COVERAGE C MEDICAL PAYMENTS, 2 Exclusions:

    a.  "Bodily injury", "personal and advertising injury" or medical expenses to:

        (1) "Employees", "contractors", "volunteer workers", or "temporary workers" of any insured; or

        (2) "Employees", "contractors", "volunteer workers", or "temporary workers" of any insured's "contractor", arising out of and in the course of:

            (a) Employment by any insured; or

            (b) Directly or indirectly performing duties related to the conduct of any insured's business; or

        (3) Any person who is performing any work or providing any service for or on behalf of any insured or "contractor" of any insured, whether on a paid or volunteer basis, including non-"employee" laborers; or

        (4) Any person who is an "employee", "contractor", "temporary worker", or "volunteer worker" of any "contractor" or other entity that is contracted with:

            (a) You or with any insured for services; or

            (b) Others on your behalf for services.

        (5) Any family member, domestic partner or dependent of any person described in Paragraph A.3.a.(1) through A.3.a.(4) above.

    b.  This exclusion applies:

        (1) Regardless of where the:

            (a) Services are performed; or

            (b) "Bodily injury" occurs;

        (2) Whether any insured may be liable as an employer or in any other capacity;

        (3) To any obligation to defend, indemnify, share damages with or repay someone else who must pay damages or incurs expenses because of the injury; and

        (4) To liability assumed by the insured under an "insured contract".

    **4.** For the purposes of this endorsement only, SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 7. Separation Of Insureds, is deleted and replaced by the following:

        **7.  Separation of Named Insureds**

            Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies as if each Named Insured were the only Named Insured.

**B.** The following definition is added to SECTION V - DEFINITIONS:

    "Contractor" shall include contractors, subcontractors, independent contractors, and non-"employee" laborers other than "temporary workers" and "volunteer workers".

All other terms and conditions of this policy remain unchanged.

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – MARIJUANA AND CANNABIS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**A.** The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C – MEDICAL PAYMENTS, 2. Exclusions:

This insurance does not apply to any liability for:

1. "Bodily injury" included in the "products-completed operations hazard" and arising out of, caused by, or attributable to, whether in whole or in part, the following:

   a. The design, manufacture, distribution, sale, serving, advertisement, marketing, furnishing, use, or possession of "marijuana";

   b. The design, manufacture, distribution, sale, advertisement, marketing, furnishing, service, repair, use, or possession of products or devices used for the ingestion, inhalation, absorption, or consumption of "marijuana".

2. "Bodily injury", "personal and advertising injury" or medical expenses arising out of, caused by, or attributable to, whether in whole or in part, the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana";

3. "Property damage" to "marijuana"; or

4. "Personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

   a. The design, manufacture, distribution, sale, serving, advertisement, marketing, furnishing, use, or possession of "marijuana"; or

   b. The design, manufacture, distribution, sale, advertisement, marketing, furnishing, service, repair, use, or possession of products or devices used for the ingestion, inhalation, absorption, or consumption of "marijuana".

However, this exclusion does not apply to any "hemp products" that are not designed, manufactured, distributed, sold, served, or furnished for bodily ingestion, inhalation, absorption, consumption, injection, or topical use.

**B.** This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.** above.

**C.** For the purposes of this endorsement, paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" that arises out of "marijuana" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

**D.** The following definition is added to the **Definitions** section:

1. "Hemp products" means:

   Any good or product made or derived from hemp (*Cannabis sativa L.*) that is:

   a. Legally sold under the laws of the state where the insured's premises is located;

   b. Legally sold under any applicable Federal laws; and

**Policy No.:** VBB101043 00

Exhibit "A"

    **c.**  Contains no more than 0.3 percent Tetrahydrocannabinol (THC).

**2.**  "Marijuana" means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

Which includes, but is not limited to, any of the following containing such THC or cannabinoid:

    **a.**  Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

    **b.**  Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:

        **(1)**  Resin, oil or wax;

        **(2)**  Hash or hemp; or

        **(3)**  Infused liquid or edible marijuana;

whether derived from any plant or part of any plant set forth in Paragraph **D.2.a.** above or not.

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE OPIOID AND CONTROLLED SUBSTANCE EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C – MEDICAL PAYMENTS, 2. Exclusions:

**A.** This insurance does not apply to any liability for:

"Bodily injury", "property damage", "personal and advertising injury" or medical expenses arising out of, based upon, caused by, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, whether in whole or in part, the following:

1. Any actual or alleged use, abuse, misuse, illicit use, overuse, addiction, dependency, unlawful distribution, or diversion of any "Controlled Substance";

2. Any supervision, instruction, training, education, recommendation, guideline, warning or advice given, or which should have been given, in connection with any "Controlled Substance";

3. Inadequate or inaccurate evaluation, control or reporting of, or the failure to evaluate, control or report, the conduct or suspected conduct described in paragraph **A.1.** above;

4. The development, manufacture, preparation, promotion, marketing, selling, handling, distribution, or prescription of any "Controlled Substance";

5. Any substance or product made of, made with or containing any of the substances, products or ingredients described as a "Controlled Substance", or any combination of such substances, products, or ingredients;

6. Any "Controlled Substance" that is sold or distributed under any such substance's or product's trade name; or

7. Any substance or product that has the same or substantially similar chemical formulation, structure or function as any "Controlled Substance", by whatever name manufactured, prepared, promoted, marketed, sold, handled, formulated, structured, distributed or prescribed.

**B.** This exclusion applies even if claims or suits against any insured:

1. Are brought by or on behalf of any state, municipality or other governmental entity or agency seeking damages, fines, penalties or any other type of relief, whether monetary or not, arising from or in any way related to any Insured manufacturing, selling, distributing, or dispensing "Controlled Substances"; or

2. Allege negligence, including but not limited to negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any Insured.

**C.** This exclusion also applies to any claim or suit by or on behalf of any individual or entity seeking certification at any time as a class action, whether or not such action is actually certified, arising from or in any way related to any Insured manufacturing, selling, distributing, or dispensing "Controlled Substances".

**D.** For the purposes of this exclusion, "Controlled Substances" shall mean:

1. Any opioid or narcotic drug, narcotic medication, or narcotic substance of any type, nature or kind, including, but not limited to, buprenorphine, codeine, fentanyl, hydrocodone, morphine, oxymorphone, tapentadol, oxycontin, hydromorphone, medperidine, methadone, oxycodone, or naloxone;

2. Any substance that is a controlled substance defined by or included in the Schedules of the Controlled Substance Act of the United States of America (21 U.S.C. § 801 et seq.) or any other judicial, statutory, regulatory or other legal measure of any nation, province, state, municipality or other governmental division or subdivision; or

3. Any substance that is in the future labelled or determined to be any of the substances described in **D.1.** or **D.2.** above.

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  VBB101043 00

GBA 106151 0320

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C MEDICAL PAYMENTS, 2 Exclusions:

"Bodily injury", "property damage", "personal and advertising injury" or medical expenses arising out of the ownership, maintenance, use or entrustment to others of any "unmanned aircraft". Use includes operation of or exercise of any control over any "unmanned aircraft"; and the Insured's authorization, direction or acquiescence in the operation or control of "unmanned aircraft by any person or entity; and "loading and unloading" of any such "unmanned aircraft".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the injury or damages involved the ownership, maintenance, use or entrustment to others of any "unmanned aircraft".

**B.** The following definition is added to SECTION V – DEFINITIONS:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** VBB101043 00

Exhibit "A"

COVINGTON SPECIALTY INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – CYBER LIABILITY, DATA COMPROMISE OR BREACH, AND STATUTES RELATED TO DATA SECURITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C – MEDICAL PAYMENTS, 2. Exclusions:

"Bodily injury", "property damage", "personal and advertising injury" or medical expenses arising out of, based upon, caused by, attributed to, directly or indirectly resulting from, or in consequence of, whether in whole or in part, or whether actual or alleged, the following:

1. Any access to, disclosure or threat of disclosure of, dissemination of, theft of, or alteration of any person's "personal information or data" or an organization's "confidential information", whether intentional or not or whether authorized or unauthorized;

2. The loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate "electronic data";

3. The loss of, loss of use of, damage to, corruption of, inability to access, or reduction in functionality of a "computer network";

4. Any failure to prevent unauthorized use or access of an insured's "electronic data" or "computer network";

5. Any failure to properly backup, secure a backup, or restore a backup of "electronic data" to a point prior to an act or event described in **A.1.** through **A.4.** above, or the loss of information or data resulting from the restoration of a backup of "electronic data" to a point prior to an act or event described in **A.1.** through **A.4.** above;

6. Any material that violates a person's or organization's right of privacy when the material was obtained through the unauthorized access to any "electronic data" or "computer network";

7. Any violation of any international, federal, state, or local statute, law, rule, ordinance, or regulation that addresses, prohibits, regulates, or limits the printing, interception, dissemination, disposal, destruction, collecting, recording, sending, transmitting, communicating, distribution, sharing, sale, storage, retaining, receiving, or protection of "personal information or data" or an organization's "confidential information", including, but not limited to:

   a. The Illinois Biometric Information Privacy Act (BIPA);

   b. The California Consumer Privacy Act (CCPA);

   c. The California Invasion of Privacy Act (CIPA);

   d. The New York Stop Hacks and Improve Electronic Data Security Act (SHIELD Act);

   e. The Health Insurance Portability and Accountability Act of 1996 (HIPAA)

   f. The European Union General Data Protection Regulation (GDPR); or

   g. Any similar or related statute, law, rule, ordinance, or regulation imposed in any jurisdiction;

   including any amendments thereto; or

8. Any violation of any contractual obligation relating to the printing, interception, dissemination, disposal, destruction, collecting, recording, sending, transmitting, communicating, distributing, sharing, sale, storage, retaining, receiving, or protection of any "personal information or data" or an organization's "confidential information".

**Policy No.:** VBB101043 00

GBA 106167 0422

Page 1 of 3

Exhibit "A"

**B.** This exclusion applies even if:

    **1.** Damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, costs associated with the replacement or reissuance of payment cards, fines, penalties, loss of use of property, increased cost of goods, materials, or services, or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **A** above;

    **2.** The "electronic data" is stored by another party on behalf of any insured;

    **3.** The "computer network" is operated or maintained by another party on behalf of any insured; or

    **4.** The claims against any insured allege negligence or other wrongdoing in the:

        **a.** Supervision, hiring, employment, training, or monitoring of others by that insured;

        **b.** Investigation or failure to investigate any act or event described in Paragraph **A** above;

        **c.** Reporting or failure to report to the proper authorities any illegal or unauthorized act or event described in Paragraph **A** above; or

        **d.** Notifying or failure to notify any employee, customer, client, donor, patient, shareholder, owner, partner, member, director, officer, or independent contractor of any act or event described in Paragraph **A** above.

**C.** SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, item p. Electronic Data is deleted.

**D.** For the purposes of this exclusion:

    **1.** "Computer network" means a group of computers that use a set of common communication protocols over digital interconnections for the purpose of sharing, transmitting, processing, or storing information, data, or resources located on or provided by the network nodes; and the equipment, cables, hardware, firmware, and software necessary to operate, maintain, or facilitate the use of such networks.

    **2.** "Confidential information" means:

        **a.** Patents, trade secrets, processing methods, customer lists or information, intellectual property, financial information, credit card information, credit reports or history, employee information or records, consumer data, marketing information or strategies, private company data (including, but not limited to, emails, files, memorandums, reports, or analytics), any information or data that could have commercial value, or any other type of nonpublic information or records;

        **b.** Any information disclosed by one party to another party, whether orally, electronically, or in writing, that is designated to be confidential, proprietary, or private, or that reasonably should be understood to be given the nature of the information and the circumstances of disclosure, regardless of whether or not a signed agreement of confidentiality or nondisclosure has been made between the parties involved; or

        **c.** The "personal information or data" of any employee, customer, client, donor, patient, shareholder, owner, partner, member, director, officer, independent contractor, or anyone else for whom any insured was entrusted with the protection of "personal information or data".

    **3.** "Electronic data" means information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment or other electronic backup facilities; and data transmission or storage provided by means of the Internet or "computer network".

    **4.** "Personal information or data" means information that identifies, relates to, describes, is capable of being associated with, or could reasonably be linked to a particular person or household, including, but not limited to:

        **a.** Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, password, account name, social security number, driver's license or state identification card number, passport number, telephone number, insurance policy number, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information or records, or health insurance information, or other similar identifiers, characteristics, or descriptors;

Exhibit "A"

**b.** Commercial information, including records of personal property, products, or services purchased, obtained, or considered, transactions occurring over a peer-to-peer electronic cash system, or other purchasing or consuming histories or tendencies;

**c.** Biometric data or information (such as a fingerprint, voice print, retina or iris image, DNA or other genetic material, face geometry, or any other unique physical representation or digital representation of biometric data);

**d.** Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a person's or household's interaction with an internet website, application, or advertisement;

**e.** Geolocation data;

**f.** Audio, electronic, visual, thermal, olfactory, or similar information;

**g.** Professional or employment-related information that is not publicly available;

**h.** Education information, defined as information that is not publicly available personally identifiable information as defined in the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. section 1232g; 34 CFR Part 99) including any amendments thereto;

**i.** Identifiers set forth in any consumer protection or privacy statute, law, rule, ordinance, or regulation, including, but not limited to, the identifiers shown in Paragraphs **1**. through **8**. above; or

**j.** Inferences drawn from any of the identifiers shown in Paragraphs **1**. through **9**. above to create a profile about a person or household reflecting such person's or household's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, or aptitudes.

All other terms and conditions of this policy remain unchanged.

Exhibit "A"

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – CANINES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; and COVERAGE C MEDICAL PAYMENTS, 2. Exclusions:

"Bodily injury", "property damage", "personal and advertising injury" or medical payments to others caused by any canine, whether owned or not owned by any insured.

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  VBB101043 00

GBA 106174 0322

Exhibit "A"

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE EXCLUSION – FLUORINATED COMPOUNDS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C – MEDICAL PAYMENTS, 2. Exclusions:

"Bodily injury", "personal and advertising injury" or medical expenses arising out of, based upon, caused by, directly or indirectly resulting from, or attributed to "fluorinated compounds", including, but not limited to:

1. Ingestion of, inhalation of, contact with, exposure to, or existence of "fluorinated compounds";

2. The manufacture, packing, distribution, sale, installation, application, repair, removal, encapsulation, abatement, replacement, handling, recycling, or disposal of "fluorinated compounds";

3. The discharge, dispersal, escape, leaching, leakage, flaking, friability, presence, migration, release, or seepage of "fluorinated compounds";

4. Loss of, loss of use of, damage to, or contamination of any property, land, water, or water source due to the presence of "fluorinated compounds";

5. The remediation of any property, land, water, or water source due to contamination resulting from the presence of "fluorinated compounds", which includes, but is not limited to, testing, studying, monitoring, surveying, engineering, design, planning, treatment, abatement, encapsulation, control, clean-up, removal, or any other action as necessitated by the remediation process;

6. Any violation of any international, federal, state, or local statute, law, rule, ordinance, or regulation regarding "fluorinated compounds"; or

7. Any other liability, damage, loss, cost or expense arising out of or related in any way to "fluorinated compounds".

**B.** This exclusion applies even if the claims or suits against any insured:

1. Are brought by or on behalf of any federal, state, municipal, or other governmental entity or agency seeking damages, fines, penalties, or any other type of relief, whether monetary or not, arising out of, based upon, caused by, directly or indirectly resulting from, attributable to, or in consequence of that which is excluded by A.1. through A.7. above;

2. Are brought by or on behalf of any individual or entity seeking certification at any time as a class action, whether or not such action is actually certified, arising out of, based upon, caused by, directly or indirectly resulting from, attributable to, or in consequence of that which is excluded by A.1. through A.7. above; or

3. Allege negligence, including but not limited to negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by any Insured.

**C.** For the purposes of this exclusion, "fluorinated compounds" means:

1. Any fluorinated or semi-fluorinated chemical compound such as, but not limited to, perfluorinated or polyfluorinated compounds (PFC), perfluoroalkyl or polyfluoroalkyl substances (PFAS), perfluorooctanoic acid (PFOA), perfluorooctanesulfonic acid (PFOS), perfluorooctanesulfonyl fluoride (POSF), GenX, C8, ADONA, or F53B;

2. Any and all substances listed on the United States Environmental Protection Agency Master List of PFAS substances, or on any corresponding list of PFAS substances maintained by any other federal, state, or local agency or authority;

3. Any other organofluorine compound that is known, alleged, or suspected to be harmful to the environment or to living organisms;

Exhibit "A"

4.  Any goods or products, including "your product", that contains or is comprised of, in any amount, any substance included in C.1. through C.3. above;

5.  Any chemical, component, compound, material, product, or substance containing, comprised of, made of, or derived from any substance included in C.1. through C.3. above; or

6.  Any associated homologues, isomers, salts, ethers, esters, alcohols, acids, precursor chemicals and derivative, formulation, transformation, degradation, byproduct, compound, intended replacement, or generic version of any substance included in C.1. through C.3. above.

All other terms and conditions of this policy remain unchanged.

Exhibit "A"

**COVINGTON SPECIALTY INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

The following conditions are added and supersede any provisions to the contrary:

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. a. Cancellation For Policies In Effect 90 Days Or Less

   If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

       (a) A material misstatement or misrepresentation; or

       (b) A failure to comply with underwriting requirements established by the insurer.

   b. Cancellation For Policies In Effect For More Than 90 Days

   If this policy has been in effect for more than 90 days, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

   (1) 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

   (2) 45 days before the effective date of cancellation for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. NONRENEWAL**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of the policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**Policy No.:** VBB101043 00

GBA 903001 0914 Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2006

# EXHIBIT





A Berkshire Hathaway Company

**Paul Kallio**
945 E Paces Ferry Rd NE | Suite 1800
Atlanta, Georgia 30326
Direct: 404-260-3806
Fax: 404-231-3755
Email: pkallio@rsui.com

June 9, 2025

Hoffman, Larin & Agnetti
Attn: John B Agnetti
909 N Miami Beach Blvd
Suite 201
Miami, FL 33162-3712
Email: info_hlalaw.com

RE:  Insured:              Global Warehouse Solutions, LLC
     Policy Number:        VBA916655 (05/02/2023 – 05/02/2024)
     Date of Loss:         12/06/2023
     Claimant:             Michael Brown
     Claim Number:         7030194800

### COVERAGE DISCLAIMER

Dear Mr Agnetti:

RSUI Group, Inc. ("RSUI") on behalf of Covington Specialty Insurance Company ("Covington") acknowledges receipt of your correspondence dated June 4, 2025 regarding the above-captioned matter. We regret to advise you that there is no coverage for the damages alleged for the reasons discussed below.

### The Facts

On June 05, 2025 we received an amended complaint alleging that on or about December 6, 2023, an employee of Global Warehouse Solutions, LLC (Arik Glasier), was operating a forklift when he reversed into the vehicle that was being operated by the Plaintiff Michael Brown. Mr Brown is pursuing a claim for damages and injuries arising out of this incident. The nature and extent of the alleged damages and injuries are not known to us.

### The Policy

Covington issued a Commercial General Liability Policy to Global Warehouse Solutions, LLC under policy number VBA916655 for the 05/02/2023 – 05/02/2024 policy period. The policy carries limits of $1M per occurrence and $2M general aggregate.

For your convenience, we have set forth below what we believe to be the pertinent provisions of the policy. Please note, however, that that discussion is only a partial recitation of the terms, conditions, exclusions and definitions contained in the policy. It is not intended to supplement, amend, supersede or otherwise alter the policy. Covington does not intend to waive any of the provisions of the policy by virtue of its synopsis. Please consult your copy of the policy for a complete listing of all of the terms, conditions, exclusions and definitions contained therein.

RSUI Indemnity Company
Landmark American Insurance Company
Covington Specialty Insurance Company

0923

The Covington policy contains the following pertinent policy provisions either in whole or in part:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### CG 00 01 04 13

**SECTION I-COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**
  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or suit that may result.

**SECTION V – DEFINITIONS**

**2.** "Auto" means:

  **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
  **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

***

This policy contains the endorsement GBA 106068 1215 entitled, **ABSOLUTE AIRCRAFT, AUTO AND WATERCRAFT EXCLUSION** which states in part:

### ABSOLUTE AIRCRAFT, AUTO AND WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

RSUI Indemnity Company
Landmark American Insurance Company
Covington Specialty Insurance Company

—— Exhibit "A" —— —          — —

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, paragraph g. is deleted and replaced with the following:

**g. Aircraft, Auto Or Watercraft**
"Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

All other terms and conditions of this policy remain unchanged.

\*\*\*

**Discussion**

Under the Insuring Agreement cited above, the Covington policy applies to "bodily injury" or "property damage" caused by an "occurrence" that takes place during the policy period.

However, the **Absolute Aircraft, Auto and Watercraft Exclusion** removes coverage for damages arising out of or resulting from the use of any "auto". Since the alleged damage in this case arises out of the use of an "auto", this exclusion bars coverage.

**Conclusion**

**Since there is no coverage for this loss, Covington has no duty to defend or indemnify you in this matter. We strongly recommend you submit this to your Auto Liability insurance carrier.**

It is to be understood that **any** action taken by us in the past or future, does not constitute and should not be considered as a waiver of any rights and defenses available to Covington and shall not estop Covington from asserting, at a later date, any rights or defenses that may be available now or at any time hereafter.

This coverage position is based on information presently known to Covington. Therefore, if you have any facts or other information which may impact the position of Covington, please forward same to the undersigned for further consideration of coverage. Covington does not waive its rights to assert additional coverage defenses should other coverage issues become apparent.

If you receive any new or amended complaints, pleadings, allegations or claims, please notify us immediately and send us copies of any legal papers you receive for further consideration of coverage.

Should you have any questions or would like to discuss this matter further, do not hesitate to contact me.

Sincerely,

Paul Kallio
Senior Claims Specialist
RSUI Group, Inc.
404-260-3806
pkallio@rsui.com


cc:     Veronica Rodriguez, Keyes Coverage
        vrodri uez  ke escovera e.com

        Jason Glenn, SLB Insurance Group.
        jglenn@slbig.com

Exhibit "A"